COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-502-CV

 

 

TRAVELERS LLOYDS INSURANCE                                          APPELLANT

COMPANY

 

                                                   V.

 

DYNA TEN CORPORATION                                                      APPELLEE

 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Travelers Lloyds Insurance Company appeals from a
summary judgment in favor of Dyna Ten Corporation.  We reverse and remand.

                                            Background








The underlying facts are not in dispute.  See Tex. R. App. P.
38.2(a)(1)(B).  On or about August 1,
2005, an HVAC condenser water line ruptured on the fifth floor of AThe
Tower@ condominium
skyscraper in Fort Worth.  The ruptured
water line resulted in water damage to multiple floors, the elevator system,
and the fire alarm system.  Travelers
contends the rupture of this water line was caused by improper soldering of the
high‑pressure pipe and joint at the time of the installation.  Dyna Ten, a plumbing subcontractor on a
construction project at the Tower, installed the pipe.  The general contractor for the construction
project was Turner Construction Company, and the project was governed by a
construction contract entered into between Turner as AContractor@ and TLC
Green Property Associates I, L.P. (ATLC@) as AOwner@ of the
Tower.

The contract between TLC and Turner contained the
following waiver of subrogation:

13.7  Waiver of Subrogation








Owner and Contractor
waive all rights against each other, if any, for damages caused by fire or
other causes of loss to the extent of actual recovery of any insurance proceeds
under any property insurance applicable to the Project except such rights as
they have to proceeds of such insurance held by Owner in good faith.  This waiver applies regardless of whether or
not the applicable insurance policies were purchased and/or effective before
this Agreement was entered into or purchased pursuant to the terms of this
Agreement.  Owner requires that
Contractor and its separate Contractors, and the subcontractors,
sub-subcontractors, agents and employees of any of them, by appropriate
agreements, written where legally required for validity, obtain similar waivers
each in favor of the Owner.  The policies
shall provide such waivers of subrogation by endorsement or otherwise.  A waiver of subrogation shall be effective as
to a person or entity even though that person or entity did not pay the
Insurance premium directly or indirectly and whether or not the person or
entity had an insurable interest in the property damaged.

 

Travelers provided a commercial insurance policy
composed of deluxe property coverage, commercial general liability coverage,
and employee benefits liability coverage relating to the Tower.  The policy lists the Tower as an insured
location, and it identifies TLC as a named insured.  Travelers paid insurance benefits to or on behalf
of TLC in the sum of $119,922.09.

Travelers then sued Dyna Ten, claiming that it
was entitled as TLC=s subrogee to recover damages
against Dyna Ten.  Dyna Ten filed a
motion for summary judgment on the affirmative defense of waiver, arguing that
the contract=s subrogation waiver, as well as
a subrogation waiver in the policy, precluded Travelers=s
subrogation claim as a matter of law. 
The trial court granted Dyna Ten=s
motion; the trial court=s order does not indicate
whether its judgment is based on the contract, the policy, or both.  Travelers filed this appeal.

                                       Standard
of Review








We review summary judgments de novo.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
Under the standard applicable to a traditional motion for summary
judgment, the motion should be granted only when the movant establishes that
there is no genuine issue as to any material fact and that it is entitled to
judgment as a matter of law.  See
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).

                                             Discussion








An insurer=s right
to subrogation derives from and is limited to the rights of the insured.  Trinity Universal Ins. Co. v. Bill Cox
Constr., Inc., 75 S.W.3d 6, 8 (Tex. App.CSan
Antonio 2001, no pet.); see also TX. C.C., Inc. v. Wilson/Barnes Gen.
Contractors, Inc., 233 S.W.3d 562, 571 (Tex. App.CDallas
2007, pet. denied) (holding insurer=s
subrogation claim barred as a matter of law when property owner waived
subrogation Abecause [the insurer=s]
rights are limited to [the property owner=s]
rights@); Nat=l Union
Fire Ins. Co. v. John Zink Co., 972 S.W.2d 839, 844 (Tex. App.CCorpus
Christi 1998, pet. denied) (AThe
subrogees stand in the shoes of the one whose rights they claim, and the extent
of the subrogees= remedy and the measure of their
rights are controlled by those possessed by the subrogor.@).  A release between the insured and the
offending party prior to the loss destroys the insurer=s rights
by way of subrogation.  Trinity
Universal, 75 S.W.3d at 10.  The
purpose of a waiver‑of‑subrogation provision in a construction
contract Ais to eliminate the need for
lawsuits by protecting all contracting parties from property loss under the
owner=s
property insurance.@ 
Walker Eng'g, Inc. v. Bracebridge Corp., 102 S.W.3d 837, 841
(Tex. App.CDallas 2003, pet. denied).

When reviewing a trial court=s
interpretation of a contract, we give words in the contract their plain meaning
and examine the entire contract in an effort to harmonize and give effect to
all the provisions so that none will be rendered meaningless.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157B59 (Tex. 2003); Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
We determine the parties= intent
from the instrument as a whole, considering each provision not in isolation but
with reference to the entire contract.  Stine
v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002); Coker, 650 S.W.2d at
393.  We will find the contract to be
unambiguous and will construe it as a matter of law if we can give it a certain
or definite legal meaning or interpretation. 
Coker, 650 S.W.2d at 393; Ludwig v. Encore Med., L.P., 191
S.W.3d 285, 290 (Tex. App.CAustin
2006, pet. denied).

1.     The construction contract=s waiver
provision








Dyna Ten first argues that the subrogation waiver
in the contract between TLC and Turner bars Travelers=s
subrogation claim against Dyna Ten.  We
disagree.  The waiver provides that AOwner
and Contractor waive all rights against each other . . . for damages
caused by fire or other causes of loss to the extent of actual recovery of any
insurance proceeds . . . .@
[Emphasis added.]  Thus, TLC and Turner
waived subrogation rights against each other; but nothing in the quoted
sentence suggests that TLC also waived subrogation rights in favor of Turner=s
subcontractors, including Dyna Ten.

The only provision in the contract=s
subrogation waiver that addresses Turner=s
subcontractors is this sentence: AOwner
requires that Contractor and its separate Contractors . . . , by appropriate
agreements, written where legally required for validity, obtain similar waivers
each in favor of the Owner.@  But this provision requires Turner to obtain
waivers in favor of TLC; it says nothing about TLC waiving subrogation in favor
of Turner=s subcontractors, including Dyna
Ten.








For a contrasting example of a construction
contract in which the owner clearly waived subrogation against the contractor=s
subcontractors, we look to TX. C.C. 
The subrogation waiver in that case provided that  A[t]he
Owner and Contractor waive all rights against (1) each other and any of
their subcontractors, sub‑subcontractors, agents and employees, each
of the other . . . for damages caused by fire or other perils to the extent
covered by property insurance.@  TX. C.C., 233 S.W.3d at 565 (emphasis
added).  The Dallas court of appeals held
that the owner had waived its subrogation rights against both the contractor
and its subcontractors as a matter of law. 
Id. at 574.[2]

Unlike the waiver provision in TX. C.C.,
TLC=s subrogation
waiver in this case does not explicitly extend to Turner=s
subcontractors, and nothing in the construction contract suggests that the
parties intended such a waiver.  We
therefore hold that the contract=s
subrogation waiver does not bar Travelers=s claims
against Dyna Ten.  If and to the extent
the trial court relied on the contract=s
subrogation waiver as the basis of summary judgment in Dyna Ten=s favor,
it erred.

2.     Subrogation waiver in the Travelers
insurance policy

Dyna Ten alternatively argues that a subrogation
waiver in the insurance policy Travelers issued to TLC bars Travelers=s claims
against Dyna Ten.  Travelers argues that
the waiver is an endorsement to an inapplicable coverageCcommercial
general liabilityCand thus plays no role in this
case.








The Travelers policy provided for three separate
insurance coverages:  Deluxe Property Coverage,
Commercial General Liability Coverage, and Employee Benefits Liability
Coverage.  Each coverage is independent,
defines its covered losses, and sets out its own exclusions, endorsements,
amendments, definitions, coverage limits, and coverage premiums.

The subrogation waiver upon which Dyna Ten relies
appears in an endorsement to the commercial general liability coverage, as
follows:

                                    XTEND
ENDORSEMENT

 

This endorsement modifies
insurance provided under the following:

 

COMMERCIAL
GENERAL LIABILITY COVERAGE PART

 

. . . .

 

PROVISIONS

 

. . .
.

 

C.     BLANKET
WAIVER OF SUBROGATION

 

We waive any right of
recovery we may have against any person or organization because of payments we
make for injury or damage arising out of premises owned or occupied by or
rented or loaned to you; ongoing operations performed by you or on your behalf,
done under a contract with that person or organization; Ayour work@; or Ayour products.@  We waive this right where you have agreed to
do so as part of a written contract, executed by you prior to loss.

 








In the commercial general liability coverage
part, Travelers agreed to Apay
those sums [TLC] becomes legally obligated to pay as damages because of
. . .  >property
damage= to
which this insurance applies.@  The coverage excludes A[p]roperty
damage to . . . [p]roperty you [TLC] own, rent, or occupy, including any costs
or expenses incurred by you . . . for repair, replacement, enhancement,
restoration or maintenance of such property for any reason.@

By contrast, in the Adeluxe@
property coverage form, Travelers agreed to Apay for
direct physical loss or damage to Covered Property caused by or resulting from
a Covered Cause of Loss.@ 
ACovered
Property@
includes ABuildings . . . described in the
Declarations,@ and the declarations
specifically describe the Tower.

When interpreting an insurance policy with
multiple coverages, each of the coverages, along with its definitions and
exclusions, must be read as separate and distinct.  M.J.R. Corp. v. Scottsdale Ins. Co.,
803 S.W.2d 426, 430 (Tex. App.CDallas
1991, no writ).  Separate coverages
comprise distinct, contemporaneous contracts. 
Id.; see also TIG Ins. Co. v. San Antonio YMCA, 172 S.W.3d
652, 660 (Tex. App.CSan Antonio 2005, no pet.).








The subrogation waiver upon which Dyna Ten relies
appears in the AXtend Endorsement,@ which
applies, by its express terms, solely to the policy=s
commercial general liability coverage. 
The commercial general liability coverage applies to sums TLC was
obligated to pay to third parties and specifically excludes damages to property
owned, rented, or occupied by TLC.  The Adeluxe@
property coverage, on the other hand, specifically covers property damage to
the Tower.  Thus, it appears that any
payments made by Travelers for damage caused by the HVAC water line leak would
have been made under the policy=s
property coverage, not the commercial general liability coverage,[3]
and the subrogation waiver in the AXtend@
endorsement does not apply.

We hold that Dyna Ten failed to establish as a
matter of law that the AXtend@
endorsement=s subrogation waiver applies to
the facts of this case.  Therefore, to
the extent the trial court relied on the endorsement=s
subrogation waiver as the basis for summary judgment, it erred.

                                             Conclusion








Because neither the construction contract=s
subrogation waiver nor the insurance policy=s
subrogation waiver bar Travelers=s claims
against Dyna Ten as a matter of law, we hold that the trial court erred by
granting summary judgment.  We sustain
Travelers=s sole issue, reverse the trial
court=s
judgment, and remand the case to the trial court for further proceedings.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; GARDNER and MCCOY, JJ.

 

DELIVERED:  August 26, 2009











[1]See Tex. R. App. P. 47.4.





[2]The crucial issue in TX.
C.C. was whether the waiver extended to losses occurring after construction
was complete as well as during construction. 
Id. at 564.





[3]The coverage under which
Travelers made payments is not entirely clear from the record.  Travelers simply alleged in its original
petition that it made payments Ato or for the benefit of Tower under its policy
of property insurance.@  But the burden of proving that the payments
were made under the commercial general liability coverage, thus triggering the AXtend@ endorsement=s subrogation waiver,
falls to Dyna Ten as the party seeking summary judgment, and Dyna Ten filed no
summary judgment evidence to carry its burden. 
See Tex. R. Civ. P. 166a(c). 
On appeal, Travelers asserts in its fact statementCwithout reference to the
recordCthat it paid benefits
under the Adeluxe@ property coverage, and
Dyna Ten does not dispute that assertion in its own brief.  See Tex. R. App. P. 38.2(a)(1)(B).